**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| Qiana Moore, | Case No.: 2:19-cv-02185-JAD-DJA |
| Plaintiff | |
| v. | **Order Denying Defendant's Motion to Dismiss** |
| Natural Life Inc., a Nevada corporation, d/b/a Heart and Weight Institute, | [ECF No. 28] |
| Defendant | |

Plaintiff Qiana Moore is a Black woman who worked at Natural Life Inc. d/b/a Heart and Weight Institute until November 2015, when she was fired after filing formal charges of discrimination against her employer. Moore claims that Natural Life retaliated against her for complaining about racial discrimination in the workplace, and she sues the company for multiple violations of the Civil Rights Act of 1866, 42 U.S.C. § 1981.[1] Natural Life moves to dismiss, arguing that Moore's § 1981 claims are time-barred and insufficiently plead.[2] I deny Natural Life's motion because Moore alleges (1) a sufficient causal connection between the racial discrimination she suffered and her termination to plausibly plead retaliation; and (2) continuing, discriminatory acts within the statutory period sufficient to render Natural Life's earlier racial discrimination actionable.

---

[1] ECF No. 27 (first amended complaint).

[2] ECF No. 28 (motion to dismiss).

# Background[3]

Moore's allegations of racial discrimination stem primarily from her interactions with Jim Spencer, a director/sales manager at Natural Life, and Konstantin Stoyanov, the company's president.[4] Moore claims that, from November 2013 until June 2015, Spencer made several racist remarks. On one occasion, when discussing the death penalty with Moore and another co-worker, he expressed his desire to return "to the old days and hang [B]lack folks from a tree."[5] On other occasions, Spencer indulged in racial stereotypes, bringing fried chicken to work for Black employees (and deli sandwiches for white employees) and referring to the predominantly Black, lower floor of the office as the "slums."[6] While at work, Spencer sang songs about slavery and regularly employed the racial epithet "coon baby" to describe Black people.[7] Spencer also personally targeted Moore, implying that she was a prostitute when he saw her outside of work— a comment Moore alleges Spencer would not direct at white employees.[8]

Moore's complaints to Stoyanov about this behavior largely fell on deaf ears.[9] Stoyanov and Natural Life's human-resources department were unsympathetic to Moore's claims; Stoyanov, in fact, urged Moore to "stop the organized hate" against Spencer.[10] It wasn't until August 11, 2015, when Moore filed charges of discrimination with the Nevada Equal Rights

---

[3] This is merely a summary of facts alleged in the amended complaint and should not be construed as findings of fact.
[4] ECF No. 27 at ¶ 11.
[5] *Id.*
[6] *Id.*
[7] *Id.*
[8] *Id.*
[9] *See, e.g.*, *id.*, Ex. 1 at 2 (alleging, after Moore reported Spencer's comments that seemed to endorse lynching, that "Stoyanov never addressed the complaint").
[10] *Id.* at ¶¶ 11–14.

2

Commission (NERC) and the United States Equal Employment Opportunity Commission (EEOC), that Stoyanov concretely addressed Moore's concerns.[11] Calling her a "motherfucker," Stoyanov complained about having to "deal" with these charges long after Spencer retires.[12] Moore alleges that Stoyanov did not use such "vile and unprofessional language with white employees."[13] On October 14, 2015, Stoyanov offered Moore a new office that would separate her from Spencer on the condition that she drop her charges of discrimination.[14] Moore declined his offer and, on November 1, 2015, Natural Life fired her.[15]

Natural Life moves to dismiss Moore's claims on two grounds. First, Natural Life argues that Moore cannot show retaliation under § 1981 because her termination and alleged discrimination are not causally connected. Second, Natural Life moves to dismiss all of Moore's claims as untimely, arguing that most of this alleged conduct happened outside of the statutory period and the conduct that didn't is distinct from ongoing, racial discrimination.

**Discussion**

District courts employ a two-step approach when evaluating a complaint's sufficiency on a Rule 12(b)(6) motion to dismiss. The court must first accept as true all well-plead factual allegations in the complaint, recognizing that legal conclusions are not entitled to the assumption of truth.[16] Mere recitals of a claim's elements, supported by only conclusory statements, are

---

[11] *Id.* at ¶ 15.
[12] *Id.*
[13] *Id.*
[14] *Id.* at ¶ 19.
[15] *Id.*
[16] *Ashcroft v. Iqbal*, 556 U.S. 662, 678–79 (2009).

3

insufficient.[17] The court must then consider whether the well-plead factual allegations state a plausible claim for relief.[18] A claim is facially plausible when the complaint alleges facts that allow the court to draw a reasonable inference that the defendant is liable for the alleged misconduct.[19] A complaint that does not permit the court to infer more than the mere possibility of misconduct has "alleged—but not shown—that the pleader is entitled to relief," and it must be dismissed.[20]

### I.  Moore's § 1981 claims are neither time-barred nor inadequately plead.

Moore alleges three theories of wrongdoing under § 1981: racial discrimination, racial harassment, and race-based retaliation.[21] Section 1981 prohibits, among other things, discrimination in the "making, performance, modification, and termination of contracts," as well as discrimination in the "benefits, privileges, terms, and conditions" of employment.[22] Each of Moore's theories of injury under § 1981 is subject to the federal four-year statute of limitations,[23] which accrues on the date Moore knew or should have known of her injury.[24] Both parties agree

---

[17] *Id.*

[18] *Id.* at 679.

[19] *Id.*

[20] *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

[21] ECF No. 27.

[22] 42 U.S.C. § 1981(b); *see also Manatt v. Bank of America, NA*, 339 F.3d 792, 797 (9th Cir. 2003).

[23] *Jones v. R.R. Donnelley & Sons Co.*, 541 U.S. 369, 382–84 (2004) (reasoning that the federal "catch-all" statute of limitations, § 1658, applies to claims arising under the post-1991 amendment to § 1981, and includes "petitioners' hostile work environment, wrongful termination, and failure to transfer claims").

[24] *Lukovsky v. City and Cnty of S.F.*, 535 F.3d 1044, 1048 (9th Cir. 2008).

4

that Moore's damage claims must arise from discriminatory acts occurring between July 14, 2015, and when she filed her complaint on November 14, 2019.[25]

### A.   Moore's retaliation claim

Natural Life argues that Moore's § 1981 retaliation claim should be dismissed because she cannot show a sufficient causal connection between the alleged discrimination and her termination within the statutory period. A prima facie case of retaliation under § 1981 mirrors a Title VII retaliation claim, requiring Moore to establish that (1) she "engaged in a protected activity, such as the filing of a complaint alleging racial discrimination," (2) her employer "subjected her to an adverse employment action," and (3) "'a causal link exists between the protected activity and the adverse action.'"[26] Causation can be established "based on the timing of the relevant actions."[27] When "adverse employment decisions are taken within a reasonable period of time after complaints of discrimination have been made, retaliatory intent may be inferred."[28]

Moore's § 1981 retaliation claim is both timely and adequately plead as to causality. The Ninth Circuit has long held that "adverse employment actions [that] occurred between two and three months after protected activity" are sufficient to establish causation at the pleading stage for retaliation claims.[29] Moore alleges that she filed charges of discrimination with the EEOC

---

[25] ECF No. 27; *see also* ECF No. 28 at 6; ECF No. 29 at 2–3, 10.

[26] *Manatt*, 339 F.3d at 800 (quoting *Ray v. Henderson*, 217 F.3d 1234, 1240 (9th Cir. 2000)).

[27] *Passantino v. Johnson & Johnson Consumer Prods., Inc.*, 212 F.3d 493, 507 (9th Cir. 2000).

[28] *Id.* (citing *Yartzoff v. Thomas*, 809 F.2d 1371, 1375–76 (9th Cir. 1987)).

[29] *Shahrivar v. City of San Jose*, 752 Fed. Appx. 415, 419 (9th Cir. 2018) (citing *Miller v. Fairchild Indus., Inc.*, 885 F.2d 498, 505 (9th Cir. 1989)); *see also Yartzoff*, 809 F.2d at 1376 (noting that the adverse employment actions "began less than three months after [plaintiff] filed his first administrative complaint").

and NERC on August 11, 2015, which is well within the limitations period.[30]  Moore also alleges that Natural Life fired her on November 1, 2015, after she refused Stoyanov's request to drop the charges in exchange for better treatment at work, which is also within the limitations period.[31] These allegations show protected activity and adverse action within the three-month period prescribed by the Ninth Circuit to establish a prima facie case for retaliation under § 1981.[32]

### B. *Moore's racial harassment and discrimination claims*

Both parties seem to agree that most of Moore's allegations that fall outside the limitations period are facially discriminatory,[33] but they dispute whether Stoyanov's August 11 comment is a related event sufficient to constitute an ongoing, unlawful-employment practice that renders the earlier allegations actionable.  Unlike Moore's retaliation claim, her discrimination and racial harassment claims under § 1981 are predicated on "a pattern of ongoing and persistent harassment severe enough to alter the conditions of [her] employment."[34]  Both theories are subject to the "continuing violations doctrine," which provides that "events occurring outside the limitations period may be considered as a basis for the claim so long as

---

[30] ECF No. 27 at ¶ 8.

[31] *Id.* at ¶ 19.

[32] Natural Life implies that it was only aware of Moore's July 9, 2015, complaint to human resources, which falls outside the statute of limitations, and that Moore doesn't allege when she notified Natural Life of her August 11, 2015, charges of discrimination.  ECF No. 30 at 6 n.3.  But Moore alleges that Stoyanov, Natural Life's president, berated her for filing the charges of discrimination on the day they were filed—August 11.  *See* ECF No. 27 at 15; Ex. 1 at 2.

[33] ECF No. 29 at 5-6; ECF No. 30 at 1–2 ("The first discriminatory act Mrs. Moore alleged is the most egregious . . . .").

[34] *Draper v. Coeur Rochester, Inc.*, 147 F.3d 1104, 1108 (9th Cir. 1998) (citing *Harris v. Forklift Systems, Inc.*, 510 U.S. 17, 20 (1993)).

those events are part of an ongoing unlawful employment practice."[35] This permits claims to proceed "premised upon a series of closely related similar occurrences that took place within the same general time period and stemmed from the same source" when "the violation continued into the relevant period of limitations."[36]

Generally, harassment claims should be "judged from the perspective of a reasonable person in the plaintiff's position, considering 'all the circumstances'" and taking "careful consideration of the social context in which particular behavior occurs and is experienced by its target."[37] "It is enough" if "such hostile conduct pollutes the victim's workplace, making it more difficult for her to do her job, to take pride in her work, and to desire to stay on in her position."[38] The Ninth's Circuit's reasoning in *Draper v. Coeur Rochester, Inc.* is instructive.[39] There, a former employee brought allegations of sexual harassment to her managers, who accused her of "digging up old bones" and laughed at her, which caused her to feel "frustrated and humiliated" and to believe nothing would be done to "alleviate the intolerable conditions" at work.[40] In overturning the district court's summary-judgment ruling against the employee, the Ninth Circuit noted that the manager's "snide laughter and humiliating response" could "reasonably have been perceived by [plaintiff] as an act of hostility that was clearly related to the

---

[35] *Id.* at 1107; *see also Williams v. Owens-Illinois, Inc.*, 665 F.2d 918, 924 (9th Cir. 1982) ("[A] systematic policy of discrimination is actionable even if some or all of the events evidencing its inception occurred prior to the limitations period.").

[36] *Draper*, 147 F.3d at 1108.

[37] *Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 81 (1998) (quoting *Harris*, 510 U.S. at 23).

[38] *Steiner v. Showboat Operating Co.*, 25 F.3d 1459, 1463 (9th Cir. 1994).

[39] *Draper*, 147 F.3d at 1108.

[40] *Id.* at 1107.

authority he customarily exercised over her and to his prior, as well as his future, discriminatory treatment of her."[41]

      Like the *Draper* manager's response, Stoyanov's August 11 comment to Moore is a sufficiently plausible continuing violation that renders Moore's additional allegations of racial discrimination under § 1981 timely. In "loudly and angrily berat[ing]" her for filing her charges of discrimination, Stoyanov appears to have continued his practice of belittling and dismissing Moore's discrimination claims.[42] Stoyanov's comment, in fact, reveals little interest in remedying Spencer's racist behavior and instead appears to sanction it.[43] This inference is buoyed by Moore's termination a few months later.[44] And while Natural Life points out that "motherfucker" is not generally a racially charged term,[45] Moore also alleges that Stoyanov would not use such "vile and unprofessional language with white employees."[46] This characterization is sufficient to show, at the pleading stage, that the term was racially discriminatory and would be taken as such by a reasonable employee in Moore's position.[47] So, Moore has plausibly alleged a continuing violation within the statutory period that renders her additional allegations of racial discrimination and harassment actionable.

---

[41] *Id.* at 1109.

[42] ECF No. 27 at ¶ 11 ("Mr. Stoyanov told QIANA MOORE to 'stop the organized hate' against Mr. Spencer. Mr. Stoyanov then threated QIANA MOORE with termination.").

[43] *Id.* at ¶ 15 (reciting that Stoyanov would have to "deal" with these charges long after Spencer "retired").

[44] *Id.* at ¶ 19.

[45] ECF No. 28 at 6 (citing *Steiner*, 25 F.3d at 1464).

[46] ECF No. 27 at ¶ 15.

[47] *Steiner*, 25 F.3d at 1463 (reasoning that it must "consider what is offensive and hostile to a reasonable *woman*") (citing *Ellison v. Brady*, 924 F.2d 872, 878 (9th Cir. 1991)) (emphasis in original).

**Conclusion**

IT IS THEREFORE ORDERED that Natural Life's motion to dismiss **[ECF No. 28] is DENIED**. Natural Life has 14 days to answer.[48]

DATED August 25, 2020.

_____
Jennifer A. Dorsey
United States District Judge

---

[48] Fed. R. Civ. P. 12(a)(4)(A).